# EXHIBIT

# A

IN THE CIRCUIT COURT OF PRINCE GEORGE'S COUNTY, MARYLAND

| | |
|---|---|
| CHRISTINE COOPER<br>8334 Woodyard Road<br>Clinton, MD 20735<br><br>    Plaintiff<br><br>v.<br><br>CAPITAL AREA NURSE<br>PRACTITIONERS LLC d/b/a DistrictFuze<br>840 First Street Northeast, 3rd Floor<br>Washington, D.C. 20002<br><br>and<br><br>JOANNE WRIGHT, RN<br>2809 Memorial Street, Apt. C2<br>Alexandria, VA 22306<br><br>    Defendants | Case No.: C-16-CV-23-004263 |

## AMENDED COMPLAINT

1. Plaintiff Christine Cooper brings this civil action against Defendants Capital Area Nurse Practitioners LLC and Joanne Wright, RN for negligent administration of infusion therapy that resulted in respiratory arrest and hypoxic-ischemic brain injury and has rendered Plaintiff permanently disabled, unemployable, and in need of multi-specialty healthcare for the remainder of her life. This Amended Complaint adds Joanne Wright, RN as a party defendant.[1]

## PARTIES

---

[1] A redline showing the changes from the complaint to the amended complaint is attached as Exhibit 1. Certificates of qualified experts and reports for the claims against both defendants are attached hereto as Exhibit 2.

2. Christine Cooper (DOB: 01/29/78) is a resident of Prince George's County, Maryland, where she lives with her two daughters and her partner, Michael Mitchell.

3. Defendant Capital Area Nurse Practitioners, LLC (hereinafter "CANP") is a limited liability company organized and existing under the laws of the District of Columbia with a principal place of business at 840 First Street Northeast, 3rd Floor, Washington D.C. 20002. Defendant CANP does business under the trade name "DistrictFuze." At all times relevant to the claims set forth herein, Defendant CANP was the actual and/or apparent employer of Defendant Joanne Wright, RN, such that Defendant CANP is responsible under principles of vicarious liability for her negligent actions and omissions.

4. Defendant Joanne Wright, RN is a registered nurse who at all relevant times was the actual and/or apparent agent of Defendant CANP and was working within the scope of that employment, such that Defendant CANP is responsible under principles of vicarious liability for her negligent actions and omissions. She is a resident of Virginia.

## FACTS APPLICABLE TO ALL COUNTS

5. As of January 2023, Plaintiff Christine Cooper was a 44-year-old mother in her normal good health, whose medical history included successful weight loss surgery in May 2022.

6. On January 8-9, 2023, Plaintiff was feeling somewhat tired and a bit weak.

7. Based on advertising materials promulgated by Defendant CANP and stating that its infusion products would make patients feel better, Plaintiff made an appointment to receive infusion therapy and proceeded to pay Defendant CANP for providing that therapy.

8. Defendants never informed Plaintiff that the proposed infusion therapy had only very short acting and transient benefits and that it had substantial risks which far outweighed those benefits.

9. Defendants also never informed Plaintiff of alternative therapies, including asking her physician for evidence-based treatment for her symptoms.

10. On January 10, 2023, Defendants documented that Plaintiff was suffering from "malnutrition" from her gastric bypass and recommended that she receive an infusion therapy known as "Recover," which Defendants represented is intended for patients who have drunk too much alcohol or have just engaged in serious and protracted exercise, such as a marathon.

11. Defendants did not do any testing or analysis to form a reasonable belief for the conclusion that Plaintiff was malnourished or otherwise a proper candidate for the proposed infusion therapy.

12. On the day in question, Defendant CANP sent its employee, Defendant Joanne Wright, RN, to Plaintiff's home to administer its proposed treatment.

13. Defendants failed to take precautions and lacked training to handle possible complications of the proposed treatment.

14. Defendant Joanne Wright, RN, arrived at Plaintiff's home, gave her a vitamin B12 shot, hooked her up to the intravenous access, and administered Defendants' IV infusion therapy, which was represented as consisting of a liter of saline fluid, plus several additives.

15. At no time did Defendants conduct an assessment of the patient nor did they make a determination that the benefits of the treatment exceeded the risks.

16. During preparation of the infusion therapy, there was a significant leak from the bag.

17. Defendant Joanne Wright, RN had a pump-like device, which she explained would help get the infusion in faster. She then hooked the device to the IV line, and started pumping it.

18. The infusion lasted about 10 minutes in total.

19. Shortly after the infusion was complete, Plaintiff Christine Cooper's eyes rolled to the back of her head, and she started shaking uncontrollably and turned blue. 911 was called.

20. Prince George's County Fire Department EMS responders arrived 20 minutes later.

21. In the interim, between the time that 911 was called and the EMS came, Defendants did not take any steps to assist the Plaintiff's breathing despite her blue color.

22. Even though the patient remained blue for a substantial period of time, Defendants did not assist Plaintiff with her airway or her respiratory insufficiency.

23. As a result of the complications of the IV infusion and Defendants' failure to intervene to protect the Plaintiff's airway, the Plaintiff received insufficient oxygen for an extended period.

24. When emergency responders arrived, they placed Plaintiff Christine Cooper on monitoring devices, noted that her blood oxygen saturation was 81%, adjusted her airway, put her on a non-rebreather mask, and thereby restored her blood oxygenation to a normal level.

25. Emergency providers took Plaintiff Christine Cooper to Southern Maryland Hospital, where she was treated in the emergency department, and a workup was begun to determine the cause of her sudden onset of seizures and respiratory decline.

26. Providers at Southern Maryland Hospital observed that the seizures and respiratory insufficiency/arrest were caused by the administration of the infusion therapy and included in their differential diagnosis the administration of excess air into Christine Cooper's vasculature during Defendants' IV therapy.

27. Plaintiff Christine Cooper was transferred from Southern Maryland Hospital to Georgetown University Hospital Center for a higher level of care. She remained at Georgetown for many weeks.

28. A prolonged workup at Georgetown ruled out any pre-existing condition such as infection which could have led to Plaintiff Christine Cooper's seizure episode and arrest.

29. After ruling out any other causes aside from Defendants' infusion therapy, the providers at Georgetown concluded that the Plaintiff's seizure, respiratory insufficiency/arrest, and resulting anoxic brain injury were the likely result of Defendants' IV infusion therapy.

30. Defendants never disclosed to Christine Cooper that the administration of the IV infusion therapy could result in seizures, respiratory arrest, and anoxic brain injury. These were material risks of Defendants' infusion therapy, such that proper informed consent required their disclosure.

31. Defendants also failed to disclose that Defendant Nurse Wright was not trained and equipped to handle known adverse reactions to the infusion therapy, such that a patient would suffer prolonged respiratory insufficiency and anoxia if these adverse reactions or other complications occurred.

32. Defendants had an obligation to use reasonable care in the selection of the additives to be infused into Plaintiff Christine Cooper, in the infusion of the saline containing the selected additives, and in reacting to any complications of that infusion.

33. Defendants deviated from standards of care when they improperly infused their products into Plaintiff Christine Cooper, when they infused her with contaminants, when they infused their products and contaminants without having knowledge and training and equipment for handling complications, and when they failed to react to the complications of their infusion in a manner which preserved Plaintiff's vital functions, including her ability to oxygenate blood and to circulate oxygenated blood.

34. Defendants deviated from standards of care when they failed to plan and prepare appropriately for the infusion, failed to offer a less risky and more beneficial course of treatment, improperly infused their products into Plaintiff Christine Cooper, infused her with contaminants, infused their products and contaminants without having knowledge and training and equipment for handling complications, and failed to react to the complications of their infusion in a manner which preserved Plaintiff's vital functions, including her ability to oxygenate blood and to circulate oxygenated blood.

35. As a further result of Defendants' deviations from the standard of care and failure to obtain informed consent, Plaintiff has incurred past medical expenses and will incur future medical expenses for medical and related care costs, including a multidisciplinary healthcare team to tend to her medical needs, rehabilitative needs, and activities of daily living.

36. As a further result of Defendants' deviations from the standard of care and failure to obtain informed consent, Plaintiff suffers and will continue to suffer profound neurologic

deficits including but not limited to tetraplegia, near complete paralysis of the left side of her body, and severe loss of brain tissue from hypoxic encephalopathy.

37. As a further result of Defendants' deviations from the standard of care and failure to obtain informed consent, Plaintiff has been rendered unable to work, unable to perform household services, and unable to perform her duties as a mother and spouse, and has lost nearly all quality of life, remaining bedridden and dependent on others for nearly all activities of daily living.

## COUNT ONE - NEGLIGENCE

38. Plaintiff incorporates all foregoing allegations as if set forth herein.

39. Defendants had a duty to treat Plaintiff in accordance with standards of care in the selection of the infusion therapy, the pre-therapy workup of the patient, the manner in which the infusion therapy was administered, and the management of any complications from the therapy.

40. Defendants breached these duties in multiple respects, including but not limited to selecting infusion therapy that contained contaminants, administering the infusion therapy in a manner which resulted in deposition of air into the Plaintiff's vasculature, failing to react to complications of infusion therapy in a competent manner, and failing to support the Plaintiff's respiratory and cardiovascular vital functions, thereby causing the Plaintiff to suffer seizures, respiratory arrest/insufficiency, and severe hypoxic brain injury.

41. As a result of Defendants' deviations from the standard of care, Plaintiff has been caused to suffer severe and permanent injuries to mind and body, including but not limited to severe anoxic brain injury, permanent and total disability, and other catastrophic damages.

WHEREFORE, Plaintiff seeks judgment against Defendants in an amount in excess of the jurisdictional limits of the District Court of Maryland, plus costs.

## COUNT TWO - INFORMED CONSENT

42. Plaintiff incorporates all foregoing allegations as if set forth herein.

43. Defendants had a duty to obtain Plaintiff's informed consent before administering vitamin infusion therapy.

44. Defendants' duty included informing Plaintiff of the significant risks associated with Defendants' infusion therapy, the relative lack of benefits, and the alternatives, including but not limited to seeking conventional medical care.

45. The Defendants failed to inform Plaintiff of these risks, the lack of benefits, and the alternatives.

46. If Defendants had made appropriate disclosure of the risk-benefit profile associated with Defendants' infusion therapy, especially as administered to Plaintiff, neither the Plaintiff nor any reasonable person would not have consented to the treatment.

47. As a result of Defendants' failure to obtain informed consent, Plaintiff has been caused to suffer severe and permanent injuries to mind and body, including but not limited to severe anoxic brain injury, permanent and total disability, and other catastrophic damages.

WHEREFORE, Plaintiff seeks judgment against Defendants in an amount in excess of the jurisdictional limits of District Court of Maryland, plus costs.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues.

Respectfully submitted,

/s/ Denis C. Mitchell

Denis C. Mitchell CPF#0012130107
dmitchell@steinmitchell.com
Gerard E. Mitchell CPF#6912010145
gemitchell@steinmitchell.com
STEIN MITCHELL BEATO & MISSNER LLP
2000 K Street, N.W., Suite 600
Washington, DC 20006
(202) 737-7777
(202) 296-8312 (facsimile)
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of October, 2023 the foregoing was electronically filed via MDEC and mailed, postage paid to:

Capital Area Nurse Practitioners, LLC
d/b/a DistrictFuze
c/o Business Filings International Inc.
2405 York Road, Suite 201
Lutherville Timonium, MD 21093

JOANNE WRIGHT, RN
2809 Memorial Street, Apt. C2
Alexandria, VA 22306

Denis C. Mitchell CPF#0012130107

# HEALTH CLAIMS ALTERNATIVE DISPUTE RESOLUTION OFFICE

CHRISTINE COOPER,
8334 Woodyard Road
Clinton, MD 20735

    Claimant

v.

CAPITAL AREA NURSE
PRACTITIONERS PLLC
d/b/a DistrictFuze
840 First Street Northeast, 3rd Floor
Washington DC, 20002

]

    Health Care Providers

CASE NO.: 2023-264

## Certificate of Qualified Expert Sharon Saunderson Coffey, DNP, FNP-C

1. My name is Sharon Coffey, DNP, FNP-C. I am a nurse practitioner and registered nurse. I have worked continuously in the field of nursing since 1986 and currently practice as a nurse practitioner and have taught nursing students and practicing nurses. I am familiar with the standards of care for infusing patients with intravenous treatments.

2. I have reviewed the medical records of Christine Cooper relating to her vitamin IV infusion with DistrictFuze on January 10, 2023, and relating to the medical care she received as a result of complications from that infusion.

3. It is my opinion to a reasonable degree of certainty in the field of nursing that Joanne Wright, RN, and Area Nurse Practitioners LLC (operating as DistrictFuze) deviated from accepted standards of care in connection with the decision to administer that infusion, the preparation for and administration of that infusion, and the reaction to complications from that infusion.

4. It is also my opinion that such deviations caused the patient to suffer harm.

5. I do not dedicate more than 25% of my time to activities involving personal injury cases.

_Sharon Saunderson Coffey, DNP, FNP-C_      8/28/23
Sharon Saunderson Coffey, DNP, FNP-C      Date

# Report of Sharon Saunderson Coffey, DNP, FNP-C

I have reviewed the medical records of Christine Cooper (DOB 01/29/78), including but not limited to the medical records of DistrictFuze, the Prince George's County Fire Department EMS, Southern Maryland Hospital, and Georgetown University Hospital.

Based on my review of these records, I have discerned that Ms. Cooper was a 44-year-old woman in her normal state of generally good health, with a history of bariatric surgery in the spring of 2022, and who suffered generalized fatigue, headache and weakness in the days leading up to January 10, 2023. She had no history of seizures. She made an appointment for January 10 to receive a vitamin infusion administered by Capital Area Nurse Practitioners LLC, which was operating under the name DistrictFuze. A registered nurse by the name of Joanne Wright, RN, was dispatched to her home and infused intravenously (IV), a liter of normal saline fluid containing additional additives. She also injected her with vitamin B-12. It appears from the limited medical records that Nurse Wright administered the IV fluids and vitamins without bringing with her any medical equipment which would allow her to handle any potentially life-threatening complications of the intervention, including but not limited to seizures, respiratory or circulatory difficulties. It also does not appear from the medical records that any physician, physician assistant, nurse practitioner or nurse performed a detailed assessment of the patient prior to the intervention, nor does it appear from the medical records that there was any determination by any higher-level provider that the benefits of the proposed treatment outweighed the risks, or that there was another less risky method of treating the patient's symptoms.

Shortly after the infusion was complete, Ms. Cooper was reported to lose consciousness and have seizures. Paramedics were summoned and the patient was noted upon arrival of emergency medical services (EMS) to have blood oxygen saturations in the low 80s. The documentation from Nurse Wright and from emergency providers indicates that there was no intervention performed before EMS arrived and no effort to protect the patient's airway during the prolonged seizure. Documentation from EMS does indicate, however, that immediately after simple measures were taken by EMS providers to open Ms. Cooper's airway, the patient's oxygen saturations normalized. Ms. Cooper was taken to Southern Maryland Hospital by ambulance where she began to receive a workup that was later completed after transfer to Georgetown University Medical Center. The medical workup from these two facilities concluded that Ms. Cooper suffered an anoxic brain injury resulting from complications of the infusion and lack of intervention to protect Ms. Cooper's airway during the seizure.

It is my opinion that Nurse Wright and Capital Area Nurse Practitioners deviated from accepted standards of care in the decision to administer this infusion, in their preparation for the infusion, in their performance of the infusion, and in their response to the complications of the infusion. The standard of care requires an adequate therapeutic rationale, assessment by a suitable provider before therapy is administered, appropriate preparation for the complications of such therapy, and adequate reaction to any such complications. The standard of care also requires complete documentation of all occurrences during the time Nurse Wright cared for Ms. Cooper. Here, there were deviations in all respects. There was no adequate therapeutic rationale, including risks or benefits provided to Ms. Cooper, nor was a complete assessment documented

by Nurse Wright or anyone else at Area Nurse Practitioners. Nurse Wright presented without the equipment or training needed to handle the foreseeable complication of seizures and resultant loss of airway induced by this infusion. Furthermore, Nurse Wright failed to adhere to standards of care when she did not assure the patient's airway was patent and open, allowing the best chance for Ms. Cooper to maintain oxygenation before, during and after the seizures began. Lastly, Nurse Wright failed to document properly within the medical record. These failures to adhere to applicable standards of care led to a prolonged period of oxygen deprivation and, ultimately, the diagnosis of hypoxic ischemic encephalopathy. It is clear from the EMS records that proper maintenance of the airway would have resulted in appropriate oxygenation of this patient, thus avoiding the patient's prolonged hypoxia, ultimately leading to an anoxic brain injury.

    I hold the opinions above to a reasonable degree of certainty in my field, and reserve the right to amend them in the event additional information is provided to me.

*Sharon Saunderson Coffey, DNP, FNP-C, ACNS-BC*
Sharon Saunderson Coffey, DNP, FNP-C, ACNS-BC, CCRN, CEN, FAEN

8/28/23
Date

CHRISTINE COOPER,
8334 Woodyard Road
Clinton, MD 20735
   Claimant

v.

CAPITAL AREA NURSE PRACTITIONERS PLLC
d/b/a DistrictFuze

   Health care provider

CASE NO.: _____

## CERTIFICATE OF QUALIFIED EXPERT

    My name is Edward Andrew Ochroch, MD. I'm a board-certified physician, specializing in Anesthesiology. I am a professor in the Department of Anesthesiology at the University of Pennsylvania School of Medicine. I have a busy academic and clinical practice, performing anesthesia care for patients and teaching residents and fellows and other healthcare providers, including Certified Registered Nurse Anesthetists (CRNAs) and CRNA students, nurses and nursing students within the University of Pennsylvania Health System. I also publish regularly in the field of Anesthesiology. As part of my practice and my teaching, I am familiar with the standards of care for intravenous administration of fluids and therapeutics, monitoring the effects of such infusions, and treating patients with adverse reactions to intravenous administrations.

    I have reviewed the medical records of Christine Cooper from her January 10, 2023, intravenous administration of fluids and other agents with DistrictFuze, medical records from MedStar Southern Maryland Hospital, and medical records from MedStar Georgetown University Hospital. I have also reviewed her records from National Rehabilitation Hospital.

    Based on my review of these materials, it is my opinion to a reasonable degree of medical certainty that Joanne Wright RN and DistrictFuze/Capital Area Nurse Practitioners deviated from accepted standards of care with respect to the infusion administered to Ms. Cooper on January 10, 2023. Those deviations involve the decision to infuse the patient, the methods of the infusion, and the reaction to the complications of that infusion. As a result of those deviations from the standard of care, Mrs. Cooper suffered anoxic brain injury and is severely disabled.

    I do not spend more than 25% of my professional time in matters related to personal injury litigation.

    The opinions set forth in this certificate and the attached report are based on materials reviewed to date. Upon review of additional materials or information, I may amend or supplement my opinions.

_____
E. Andrew Ochroch, MD

7/3/2023
Date

EXHIBIT 2

# Report of Edward Andrew Ochroch, MD

My name is Edward Andrew Ochroch and I am a physician and anesthesiologist, practicing in the University of Pennsylvania Health System. My qualifications are set out in brief in my certificate of qualified expert in this case and in more detail in the attached curriculum vitae.

Ms. Cooper's medical history included weight loss surgery in May 2022 from which she appears to have had a complete recovery.

As of January 10, 2023, she was a generally healthy 44-year-old woman. She was reported in the several days leading up to January 10 to have had some symptoms of fatigue and generalized feelings of weakness. She had no history of seizures. For that day, she made an appointment for a vitamin infusion administered by Capital Area Nurse Practitioners operating under the trade name DistrictFuze. A registered nurse by the name of Joanne Wright, RN, was sent to her home and injected her with a liter of saline fluid mixed with certain additives, including, reportedly, vitamin B.

Shortly after this infusion was completed, Ms. Cooper appears to have suffered an epileptic incident with loss of control of her airway. EMS providers were summoned, manipulated the patient and administered oxygen through an airway. The patient's oxygenation saturation, which was in the low 80s when the paramedics arrived, immediately improved. The patient remained unresponsive and was taken by ambulance to Southern Maryland Hospital.

Upon arrival at Southern Maryland Hospital, the patient began to receive a work-up which was completed at Georgetown University Medical Center, where she was transferred. The medical workup from these two facilities ruled out causes of seizure and resulting respiratory arrest other than complications of the so-called vitamin infusion administered by Capital Area Nurse Practitioners on January 10, 2023. Ms. Cooper was diagnosed with anoxic encephalopathy with severe neurologic deficits, worse on the left side of her body.

It is my opinion that the patient's seizures, respiratory distress, and resulting anoxic brain injury were the results of deviations from the standard of care by Capital Area Nurse Practitioners and Joanne Wright, RN in connection with the infusion. No therapy should be administered to a patient with symptoms of recent onset that have not been examined/diagnosed by an appropriate healthcare provider to provide safety and guidance to ensure that there is no contraindication to any therapy/treatment. The decision to administer the infusion is below standard of care, as the vitamin infusion is of little or no therapeutic value, and therefore does not warrant exposing the patient to the risks of interacting with the undiagnosed condition as well as air embolism and contaminants that are the most likely cause of her seizures, respiratory arrest, and anoxic injury. Additionally, it is a deviation from the standard of care to intravenously inject a patient with air or contaminants, as likely occurred here. It is also a deviation from the standard of care to perform an infusion on a patient, if that infusion carries a risk of respiratory distress and the provider is not trained and equipped to supply therapy to preserve the patient's ability to oxygenate in the face of distress. This infusion never should have been performed unless it was performed by providers with the

ability and equipment necessary to preserve the patient's vital functions in the event she suffered complications of the treatment.

As a result of these deviations from the standard of care, the patient suffered severe injury. If the infusion had not been performed, but rather the patient had been sent to her primary care physician for her symptoms of generalized weakness and tiredness, she would not have been injured. Likewise, if the patient had not been injected with either air or contaminants, she likely would not have been injured. Lastly, if Capital Area Nurse Practitioners and Joanne Wright had adequately preserved the patient's ability to oxygenate once she did suffer the complications of the infusion therapy, she likely would have avoided significant neurologic injury.

E. Andrew Ochroch, MD

Date 7/3/2023