## IN THE CIRCUIT COURT OF PRINCE GEORGE'S COUNTY, MARYLAND

**CHRISTINE COOPER**
**8334 Woodyard Road**
**Clinton, MD 20735**

    **Plaintiff**

**v.**

                                 **Case No.: C-16-CV-23-004263**

**CAPITAL AREA NURSE**
**PRACTITIONERS LLC d/b/a DistrictFuze**
**840 First Street Northeast, 3rd Floor**
**Washington, D.C. 20002**

**and**

**JOANNE WRIGHT, RN**
**2809 Memorial Street, Apt. C2**
**Alexandria, VA 22306**

    **Defendants**

## AMENDED COMPLAINT

    1.    Plaintiff Christine Cooper brings this civil action against Defendants Capital Area

Nurse Practitioners LLC and Joanne Wright, RN for negligent administration of infusion therapy

that resulted in respiratory arrest and hypoxic-ischemic brain injury and has rendered Plaintiff

permanently disabled, unemployable, and in need of multi-specialty healthcare for the remainder

of her life. This Amended Complaint adds Joanne Wright, RN as a party defendant. [1]

## PARTIES

---

[1] A redline showing the changes from the complaint to the amended complaint is attached as Exhibit 1. Certificates of qualified experts and reports for the claims against both defendants are attached hereto as Exhibit 2.

2.      Christine Cooper (DOB: 01/29/78) is a resident of Prince George's County,

Maryland, where she lives with her two daughters and her partner, Michael Mitchell.

3.      Defendant Capital Area Nurse Practitioners, LLC (hereinafter "CANP") is a

limited liability company organized and existing under the laws of the District of Columbia with

a principal place of business at 840 First Street Northeast, 3rd Floor, Washington D.C. 20002.

Defendant CANP does business under the trade name "DistrictFuze." At all times relevant to the

claims set forth herein, Defendant CANP was the actual and/or apparent employer of Defendant

Joanne Wright, RN, such that Defendant CANP is responsible under principles of vicarious

liability for her negligent actions and omissions.

4.      Defendant Joanne Wright, RN is a registered nurse who at all relevant times was

the actual and/or apparent agent of Defendant CANP and was working within the scope of that

employment, such that Defendant CANP is responsible under principles of vicarious liability for

her negligent actions and omissions.  She is a resident of Virginia.

## FACTS APPLICABLE TO ALL COUNTS

5.      As of January 2023, Plaintiff Christine Cooper was a 44-year-old mother in her

normal good health, whose medical history included successful weight loss surgery in May 2022.

6.      On January 8-9, 2023, Plaintiff was feeling somewhat tired and a bit weak.

7.      Based on advertising materials promulgated by Defendant CANP and stating that

its infusion products would make patients feel better, Plaintiff made an appointment to receive

infusion therapy and proceeded to pay Defendant CANP for providing that therapy.

2

8.      Defendants never informed Plaintiff that the proposed infusion therapy had only very short acting and transient benefits and that it had substantial risks which far outweighed those benefits.

9.      Defendants also never informed Plaintiff of alternative therapies, including asking her physician for evidence-based treatment for her symptoms.

10.     On January 10, 2023, Defendants documented that Plaintiff was suffering from "malnutrition" from her gastric bypass and recommended that she receive an infusion therapy known as "Recover," which Defendants represented is intended for patients who have drunk too much alcohol or have just engaged in serious and protracted exercise, such as a marathon.

11.     Defendants did not do any testing or analysis to form a reasonable belief for the conclusion that Plaintiff was malnourished or otherwise a proper candidate for the proposed infusion therapy.

12.     On the day in question, Defendant CANP sent its employee, Defendant Joanne Wright, RN, to Plaintiff's home to administer its proposed treatment.

13.     Defendants failed to take precautions and lacked training to handle possible complications of the proposed treatment.

14.     Defendant Joanne Wright, RN, arrived at Plaintiff's home, gave her a vitamin B12 shot, hooked her up to the intravenous access, and administered Defendants' IV infusion therapy, which was represented as consisting of a liter of saline fluid, plus several additives.

15.     At no time did Defendants conduct an assessment of the patient nor did they make a determination that the benefits of the treatment exceeded the risks.

16.     During preparation of the infusion therapy, there was a significant leak from the bag.

17.     Defendant Joanne Wright, RN had a pump-like device, which she explained would help get the infusion in faster. She then hooked the device to the IV line, and started pumping it.

18.     The infusion lasted about 10 minutes in total.

19.     Shortly after the infusion was complete, Plaintiff Christine Cooper's eyes rolled to the back of her head, and she started shaking uncontrollably and turned blue. 911 was called.

20.     Prince George's County Fire Department EMS responders arrived 20 minutes later.

21.     In the interim, between the time that 911 was called and the EMS came, Defendants did not take any steps to assist the Plaintiff's breathing despite her blue color.

22.     Even though the patient remained blue for a substantial period of time, Defendants did not assist Plaintiff with her airway or her respiratory insufficiency.

23.     As a result of the complications of the IV infusion and Defendants' failure to intervene to protect the Plaintiff's airway, the Plaintiff received insufficient oxygen for an extended period.

24.     When emergency responders arrived, they placed Plaintiff Christine Cooper on monitoring devices, noted that her blood oxygen saturation was 81%, adjusted her airway, put her on a non-rebreather mask, and thereby restored her blood oxygenation to a normal level.

4

25.    Emergency providers took Plaintiff Christine Cooper to Southern Maryland Hospital, where she was treated in the emergency department, and a workup was begun to determine the cause of her sudden onset of seizures and respiratory decline.

26.    Providers at Southern Maryland Hospital observed that the seizures and respiratory insufficiency/arrest were caused by the administration of the infusion therapy and included in their differential diagnosis the administration of excess air into Christine Cooper's vasculature during Defendants' IV therapy.

27.    Plaintiff Christine Cooper was transferred from Southern Maryland Hospital to Georgetown University Hospital Center for a higher level of care. She remained at Georgetown for many weeks.

28.    A prolonged workup at Georgetown ruled out any pre-existing condition such as infection which could have led to Plaintiff Christine Cooper's seizure episode and arrest.

29.    After ruling out any other causes aside from Defendants' infusion therapy, the providers at Georgetown concluded that the Plaintiff's seizure, respiratory insufficiency/arrest, and resulting anoxic brain injury were the likely result of Defendants' IV infusion therapy.

30.    Defendants never disclosed to Christine Cooper that the administration of the IV infusion therapy could result in seizures, respiratory arrest, and anoxic brain injury. These were material risks of Defendants' infusion therapy, such that proper informed consent required their disclosure.

31.    Defendants also failed to disclose that Defendant Nurse Wright was not trained and equipped to handle known adverse reactions to the infusion therapy, such that a patient would suffer prolonged respiratory insufficiency and anoxia if these adverse reactions or other complications occurred.

5

32.    Defendants had an obligation to use reasonable care in the selection of the additives to be infused into Plaintiff Christine Cooper, in the infusion of the saline containing the selected additives, and in reacting to any complications of that infusion.

33.    Defendants deviated from standards of care when they improperly infused their products into Plaintiff Christine Cooper, when they infused her with contaminants, when they infused their products and contaminants without having knowledge and training and equipment for handling complications, and when they failed to react to the complications of their infusion in a manner which preserved Plaintiff's vital functions, including her ability to oxygenate blood and to circulate oxygenated blood.

34.    Defendants deviated from standards of care when they failed to plan and prepare appropriately for the infusion, failed to offer a less risky and more beneficial course of treatment, improperly infused their products into Plaintiff Christine Cooper, infused her with contaminants, infused their products and contaminants without having knowledge and training and equipment for handling complications, and failed to react to the complications of their infusion in a manner which preserved Plaintiff's vital functions, including her ability to oxygenate blood and to circulate oxygenated blood.

35.    As a further result of Defendants' deviations from the standard of care and failure to obtain informed consent, Plaintiff has incurred past medical expenses and will incur future medical expenses for medical and related care costs, including a multidisciplinary healthcare team to tend to her medical needs, rehabilitative needs, and activities of daily living.

36.    As a further result of Defendants' deviations from the standard of care and failure to obtain informed consent, Plaintiff suffers and will continue to suffer profound neurologic

deficits including but not limited to tetraplegia, near complete paralysis of the left side of her body, and severe loss of brain tissue from hypoxic encephalopathy.

37.    As a further result of Defendants' deviations from the standard of care and failure to obtain informed consent, Plaintiff has been rendered unable to work, unable to perform household services, and unable to perform her duties as a mother and spouse, and has lost nearly all quality of life, remaining bedridden and dependent on others for nearly all activities of daily living.

## COUNT ONE - NEGLIGENCE

38.    Plaintiff incorporates all foregoing allegations as if set forth herein.

39.    Defendants had a duty to treat Plaintiff in accordance with standards of care in the selection of the infusion therapy, the pre-therapy workup of the patient, the manner in which the infusion therapy was administered, and the management of any complications from the therapy.

40.    Defendants breached these duties in multiple respects, including but not limited to selecting infusion therapy that contained contaminants, administering the infusion therapy in a manner which resulted in deposition of air into the Plaintiff's vasculature, failing to react to complications of infusion therapy in a competent manner, and failing to support the Plaintiff's respiratory and cardiovascular vital functions, thereby causing the Plaintiff to suffer seizures, respiratory arrest/insufficiency, and severe hypoxic brain injury.

41.    As a result of Defendants' deviations from the standard of care, Plaintiff has been caused to suffer severe and permanent injuries to mind and body, including but not limited to severe anoxic brain injury, permanent and total disability, and other catastrophic damages.

WHEREFORE, Plaintiff seeks judgment against Defendants in an amount in excess of the jurisdictional limits of the District Court of Maryland, plus costs.

## COUNT TWO - INFORMED CONSENT

42.    Plaintiff incorporates all foregoing allegations as if set forth herein.

43.    Defendants had a duty to obtain Plaintiff's informed consent before administering vitamin infusion therapy.

44.    Defendants' duty included informing Plaintiff of the significant risks associated with Defendants' infusion therapy, the relative lack of benefits, and the alternatives, including but not limited to seeking conventional medical care.

45.    The Defendants failed to inform Plaintiff of these risks, the lack of benefits, and the alternatives.

46.    If Defendants had made appropriate disclosure of the risk-benefit profile associated with Defendants' infusion therapy, especially as administered to Plaintiff, neither the Plaintiff nor any reasonable person would not have consented to the treatment.

47.    As a result of Defendants' failure to obtain informed consent, Plaintiff has been caused to suffer severe and permanent injuries to mind and body, including but not limited to severe anoxic brain injury, permanent and total disability, and other catastrophic damages.

WHEREFORE, Plaintiff seeks judgment against Defendants in an amount in excess of the jurisdictional limits of District Court of Maryland, plus costs.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues.

Respectfully submitted,

_____

Denis C. Mitchell CPF#0012130107
dmitchell@steinmitchell.com
Gerard E. Mitchell CPF#6912010145
gemitchell@steinmitchell.com
STEIN MITCHELL BEATO & MISSNER LLP
2000 K Street, N.W., Suite 600
Washington, DC 20006
(202) 737-7777
(202) 296-8312 (facsimile)
Counsel for Plaintiff

9

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of October, 2023 the foregoing was

electronically filed via MDEC and mailed, postage paid to:

Capital Area Nurse Practitioners, LLC
d/b/a DistrictFuze
c/o Business Filings International Inc.
2405 York Road, Suite 201
Lutherville Timonium, MD 21093

JOANNE WRIGHT, RN
2809 Memorial Street, Apt. C2
Alexandria, VA 22306

_____
Denis C. Mitchell CPF#0012130107